UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-1406 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THOMAS DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Michael Moore, a former Cook County correctional officer, attended a criminal trial of someone accused of murdering another officer. But he wasn't your average, run-of-the-mill attendee. Moore told the family that he was the decedent's partner, and that revelation put him in everyone's good graces. The family, the prosecutor, and the judge rolled out the red carpet.

Moore received special treatment before and during the trial, based on his status as the partner of the slain officer. He had a front row seat at the trial, sitting in the jury box with the family. Moore had a place of honor, literally and figuratively.

Moore also attended private meetings between the family and the prosecutor about a possible plea bargain. He had a seat at the table, and he used his special access as an opportunity to speak his mind. He spoke out against a proposed plea deal, and then went on a letter-writing campaign to stop it.

As it turns out, Moore wasn't the partner of the slain officer at all, at least not in the colloquial sense. He wasn't riding around town in a squad car with that officer, or anything along those lines. Moore later explained that he was the "partner" of the decedent in the sense that he was the officer's friend, colleague, and "brother in blue."

Lead balloons have landed more softly than Moore's explanation. The Cook County Sheriff's Office responded by filing disciplinary charges and seeking his termination. The charges included allegations about a wide assortment of antics at trial, including Moore wearing a motorcycle vest with a "Sons of Anarchy" patch. The Merit Board later conducted an evidentiary hearing, and then terminated him.

Moore believes that the Merit Board fired him in retaliation for speaking out. So he filed suit against Sheriff Thomas Dart, the Merit Board, and Cook County, bringing a First Amendment retaliation claim and a handful of state-law claims.

This Court denied an earlier motion to dismiss, albeit on narrow grounds. By the look of things, Defendants wanted this Court to declare, at the motion-to-dismiss stage, that the Merit Board correctly terminated Moore for violating the policies of the department.

Moore later amended his complaint a few times, and Defendants once again moved to dismiss. This time, Sheriff Dart unveiled a new argument. The Sheriff moves to dismiss because the complaint fails to allege any personal involvement by the Sheriff himself.

For the following reasons, the Sheriff's motion to dismiss is hereby granted. The Court declines the invitation to exercise supplemental jurisdiction over the remaining state-law claims. So the motion to dismiss filed by the Merit Board is denied as moot.

## Background

This Court assumes that any interested reader is familiar with the backstory of the case. *See generally Moore v. Dart*, 2024 WL 361240 (N.D. Ill. 2024). But the Court will give the highlights.

Cuauhtemoc Estrada, a Cook County Sheriff's Office Investigator, went to a Christmas party at a VFW hall on a wintry night. Officer Estrada spotted two people trying to rob his

2

daughter and her boyfriend at gunpoint in the parking lot. Officer Estrada reached for his gun. The robbers shot him in the chest, and Officer Estrada lost his life.

The state later filed charges against the alleged shooter, and Michael Moore took special interest in the case. He injected himself in the proceedings based on a supposed special relationship with the victim.

Moore told the victim's family that he was the officer's "partner." *See* Third Am. Cplt., at ¶¶ 1–2 (Dckt. No. 93). That revelation gave Moore special status, and he received special treatment from the family, the prosecutor, and the judge.

The family embraced Moore in the courtroom, welcoming him to sit with them as the partner of their loved one. Moore "was allowed to sit with Estrada's [] family members in the court room, specifically in the jury box." *Id.* at ¶ 1. The reason wasn't a mystery. As the complaint itself concedes, Moore "was allowed to sit with Estrada's family because he represented that Estrada was his 'partner.'" *Id.* at ¶ 2.

Moore did not merely attend the trial. He participated in pretrial hearings, too. He attended the pretrial hearings for years, making his presence felt. *Id.* at ¶ 41; Merit Board Complaint, at ¶ 7 (Dckt. No. 93-2) (attached as an exhibit to the complaint).

Moore joined intimate meetings between the family and the prosecutor about the direction of the case. *See* Third Am. Cplt., at ¶¶ 1–3, 20–21 (Dckt. No. 93). Moore "represented himself as Estrada's partner in order to access the criminal proceedings," and then "protested the plea agreement as an interested member of the law enforcement community." *Id.* at ¶ 46. He voiced strong disagreement with the proposed plea deal, and opposed anything less than a maximum sentence. *Id.* at ¶¶ 4, 22–23.

Moore went on a letter-writing campaign to derail the deal. He wrote letters to prominent public officials, including the outgoing State's Attorney (Anita Alvarez), the incoming State's Attorney (Kim Foxx), the Chief Judge of the Circuit Court of Cook County (Timothy Evans), and Sheriff Tom Dart. *Id.* at ¶¶ 6–7, 24–25. He wrote letters to the Illinois Attorney Registration and Disciplinary Commission. *Id.* at ¶ 6. He complained about the proposed plea deal to a roomful of officers, too. *Id.* at ¶ 5.

The family later discovered that Moore wasn't the victim's partner at all. *Id.* at ¶ 35. They felt betrayed. *Id.* at ¶ 40.

The false portrayal wasn't the only issue. While sitting in the jury box one day, Moore wore a sleeveless shirt and a motorcycle vest with a "Sons of Anarchy" patch. *See* Merit Board Decision, Ex. 1, at 2 (Dckt. No. 93-1) (attached as an exhibit to the complaint).

The "Sons of Anarchy" is a fictional, violent motorcycle gang featured on a TV show. The patch included a picture of the Grim Reaper holding a weapon that looks like a combination of a rifle, an axe, and a scythe.

Skullface donned a tattered, flowing robe, topped with a hood or maybe a black pointy hat. Five bony fingers held an orb of some kind, marked with "A" for "Anarchy." His other hand clutched the weapon, suggesting that the Grim Reaper meant business and was looking for trouble. Blood dripped from the blade, with no smoke emanating from the rifle, so apparently the scythe was the Grim Reaper's weapon of choice.

The Grim Reaper does look menacing. But truth be told, his facial expression is hard to decipher. It's mostly just skull.

4



The judge said that Moore couldn't sit in the jury box wearing a motorcycle vest with a "Sons of Anarchy" patch. *Id.* A courtroom isn't the best place to celebrate anarchy.

The prosecutor relayed the judge's directive, but it didn't go over well. Moore felt attached to his motorcycle vest, and didn't take kindly to the commentary about his wardrobe. He responded that he had a First Amendment right to wear whatever he wanted to wear.

The next day, Moore wore a different outfit, but he continued to use his wardrobe to express himself. This time, Moore wore a vest with a "Blue Lives Matter" patch. *Id.* The prosecutor told Moore that he couldn't sit in the jury box with that outfit.

5

Moore's response would have made the Sons of Anarchy proud. He allegedly stormed out of the courtroom after telling the prosecutor: "F*ck you very much." *Id.*

Moore's antics didn't go unnoticed. The Office of Professional Review received complaints about Moore's unprofessional conduct during the trial. *See* Third Am. Cplt., at ¶¶ 26–27 (Dckt. No. 93).

The Sheriff's Office responded by seeking disciplinary action. The Sheriff's Office filed written charges with the Merit Board, alleging that Moore had acted in an unprofessional manner and violated the code of conduct. *See* Merit Board Complaint (Dckt. No. 93-2). The disciplinary charges accused Moore of falsely portraying himself as Estrada's partner and close friend, gaining special access based on false pretenses.

The charges also pointed to the incident about the motorcycle vest with the "Sons of Anarchy" patch. The charges raised other incidents, too. At one point, Moore allegedly acted in a physically threatening manner toward the prosecutor.

The Merit Board presided over an evidentiary hearing spanning several days. When it was all said and done, the Merit Board found by a preponderance of the evidence that Moore had violated various policies of the Sheriff's Office. *See* Merit Board Decision (Dckt. No. 93-1).

The Merit Board faulted Moore for "falsely portraying himself as the partner" of the slain officer, and for "misleading" the judge. *Id.* at 6. The victim's family "was flabbergasted, surprised and felt betrayed when they found out Respondent was not his partner." *Id.*

In the end, the Merit Board terminated Moore. But Moore didn't go quietly, and he didn't take it sitting down. Instead, Moore came to the federal courthouse and filed a complaint, bringing claims under the First Amendment and state law.

This Court denied the first round of motions to dismiss. The motions involved whether Moore had engaged in protected speech. *See* 1/31/24 Mem. Opin. & Order (Dckt. No. 49). The Court issued a limited ruling, adding that it needed a more complete factual record.

The complaint survived the initial motion to dismiss, but more followed. Moore requested and received permission to amend his complaint, prompting several rounds of motions to dismiss.

The third amended complaint is the operative pleading, and it contains three claims. The first claim is a First Amendment claim against Sheriff Dart (only) in his individual capacity. The second claim is a state-law claim against Sheriff Dart in his official capacity and against the Merit Board. The third claim is an indemnification claim against Cook County.

Defendants moved to dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Analysis**

## I. The First Amendment Claim

The first claim is a First Amendment claim against Sheriff Dart in his personal capacity. That claim goes nowhere fast.

Moore alleges that Sheriff Dart violated his right to free expression by bringing disciplinary charges against him. The entirety of the claim rests on the content of the charges filed by the Sheriff's Office. *See* Third Am. Cplt., at ¶¶ 32–33 (Dckt. No. 93).

Moore points to paragraphs in the disciplinary charges about his conversations with the family. In the charges, the Sheriff's Office alleged that Moore had falsely portrayed himself as the partner of the decedent. *Id.* at ¶ 32. As Moore sees things, he was engaging in protected speech.

Moore also rests his claim on a paragraph in the disciplinary charges about his letter-writing campaign. *Id.* at ¶ 33. Moore claims that he had a First Amendment right to speak up and try to torpedo the plea deal.

Overall, Moore alleges that the Sheriff punished him for engaging in protected speech. But that claim faces a big problem from the get-go. Moore sued Sheriff Dart in his personal capacity. And the complaint does not allege that Dart himself did anything.

Liability under section 1983 requires personal involvement by the defendant. A "government official is liable only if he personally caused or participated in a constitutional deprivation. Consequently, a claim will not survive a motion to dismiss unless it pleads that a Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (cleaned up).

8

Section 1983 does not create liability based on *respondeat superior* or vicarious liability. Being the top dog isn't enough.

Officials are "accountable only for their own misconduct." *See Hess v. Garcia*, 72 F.4th 753, 767 (7th Cir. 2023). "Liability for supervisors is individual, not vicarious. For that reason, simply being atop an organizational food chain does not make a supervisor liable for a subordinate's unconstitutional conduct." *See Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025).

"The Buck stops here" is an admirable way to run an organization, especially a government agency. But it's not a basis for personal liability.

An official's signature, without more, does not establish personal involvement. The Seventh Circuit has explained that the essential question is whether an official was an actual decisionmaker. *See Snowden v. Illinois Dep't of Human. Servs.*, 75 F.4th 789, 796 (7th Cir. 2023) (holding that officials were not decisionmakers where "their sign-offs likely were a mere formality"); *see also Toran v. Bzdawka*, 72 F. App'x. 457, 462 (7th Cir. 2003) ("[Plaintiff] has not explained how either of the individual defendants was involved in his termination, other than to note that [a defendant] signed the 1997 charges prompting the settlement agreement, which is not enough on its own.").

The complaint at hand comes up short. It does not allege any personal involvement by Dart at all. It does not allege that Moore ever communicated with Dart. And it does not allege that Dart played any role in the decision to pursue charges against him.

At best, the complaint points to the signature block of the disciplinary charges filed by the Sheriff's Office. Moore alleges that "Dart personally signed the written charges against

9

Moore to be filed with the Board through his General Counsel, Nicholas Scouffas." *See* Third Am. Cplt., at ¶ 34 (Dckt. No. 93).

That phraseology feels like a sleight of hand. Saying that Dart "personally signed" the document "through" his General Counsel doesn't actually mean that Dart signed anything. It means that the General Counsel signed the document on behalf of the Sheriff's Office.

The complaint includes a picture of the signature block from the disciplinary charges, plus the preceding paragraph. *Id.* Above the signature, the text says that "THOMAS J. DART, Sheriff of Cook County, maintains that the RESPONDENT, by his conduct, has violated the Rules and Regulations and General Orders of the Cook County Sheriff's Office, the Cook County Department of Corrections, and the Cook County Sheriff's Merit Board." *Id.* The paragraph then asked the Board to hold a hearing, find Moore guilty of the charged conduct, and terminate him. *Id.*

Below that paragraph, a signature block appeared, along with a date. The typewritten text says "Thomas J. Dart," followed by "Sheriff of Cook County." *Id.*

A signature for "Thomas Dart" did appear on the line. But it wasn't signed by the Sheriff himself, as the nearby text confirmed. Below the signature line, the following handwriting appeared: "by Nicholas Scouffas General Counsel."

Everyone knows what that means. The General Counsel, not the Dart himself, signed the charges. Dart himself didn't sign anything. The General Counsel acted on behalf of the Sheriff's Office and signed the charges in his capacity as an authorized agent.

A signature is not a sufficient basis to infer personal involvement, especially when someone signs on behalf of someone else. Run-of-the-mill filings in the federal courthouse illustrate the point. The name of the U.S. Attorney routinely appears atop signature blocks by the

10

U.S. Attorney's Office, but no one thinks that the U.S. Attorney himself worked on every case or played a role in every decision.

As the Sheriff, Tom Dart leads a large organization. His name undoubtedly appears on countless pieces of paper and countless signature blocks every month. By necessity, other people sign their names on his behalf as the Sheriff. No one thinks that Tom Dart personally played a role in every decision that involves his signature.

The presence of his name simply means that the Sheriff's Office is taking action or making a decision. It does not mean that Tom Dart personally played a role in whatever appeared above the signature.

The complaint offers nothing else. The complaint doesn't allege that Dart directed Scouffas to sign the charges. Moore doesn't claim that Scouffas acted on Dart's command, or that Dart even knew about the disciplinary charges. There is no reason to think that Dart has any clue who Moore is, let alone that he played a role in the decision to terminate him.

In short, the complaint fails to state a claim against Dart in his individual capacity. It does not allege any facts that could support a plausible inference that Dart himself played a role in the decisions at issue. So the First Amendment claim against Sheriff Dart is dismissed.

## II.      State-Law Claims

The dismissal of the First Amendment claim means that only state-law claims remain. Moore asks this Court to review the Merit Board's termination decision under the Illinois Administrative Review Law. *See* Third Am. Cplt., at ¶¶ 50–72 (Dckt. No. 93). He also brings a claim for indemnification against Cook County. *Id.* at ¶¶ 73–74.

This Court has supplemental jurisdiction over those state-law claims because they were part of the same controversy as Moore's federal claim. *See* 28 U.S.C. § 1367(a). But the

11

original jurisdictional hook over the state-law claims is now gone. In that situation, a district court can keep jurisdiction over the state-law claims, but doesn't have to keep jurisdiction. Most of the time, the best course is to let state courts decide state-law claims against state actors.

A federal court "may decline to exercise supplemental jurisdiction" over a state-law claim if "the district court has dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3). And the "usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'" *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Grace v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)).

The Court sees no reason to depart from that presumption. Moore didn't offer any reason to keep the state-law claims in federal court. *See also Al's Serv. Ctr. v. BP Prods. North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2012) (explaining that while the presumption is rebuttable, "it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law") (cleaned up); *Hagan*, 867 F.3d at 830 ("[T]he court might well have abused its discretion if it had retained jurisdiction over a strictly state-law claim in an area where important state policy goals may conflict.").

Moore brings state-law claims against Cook County, the Sheriff in his official capacity, and the Merit Board. An Illinois court should decide the Illinois claims against Illinois entities. So, the Court declines to exercise supplemental jurisdiction over the state-law claims and denies the Merit Board's motion to dismiss without prejudice.

### Conclusion

For the reasons stated above, Defendant Sheriff Dart's motion to dismiss is granted. The First Amendment claim against Sheriff Dart in his individual capacity is dismissed with

prejudice.  The remaining claims are dismissed without prejudice.  The Merit Board's motion to dismiss is denied as moot.


Date:  March 19, 2026

_____

Steven C. Seeger
United States District Judge

13